v. Downers Grove, IL, Feminist Academy, arguing on behalf of the Feminist Council, Ms. Evelyne Stokes, arguing on behalf of the Feminist Academy, to reduce the state of the country. Ms. Grogan. Good afternoon. May it please the Court. My name is Amy Grogan, and I represent the plaintiff, Salce, Inc. The trial court determined that Salce did not prove its case because it failed to serve notice pursuant to Section 24 of the Mechanics' Lien Act. Salce set forth evidence of the notice, both by entering the actual intent to lien, as Exhibit 16, and through testimony from Paul Salce himself as to how it was served. None of this evidence was subjected to by defendants. Well, in fact, when the Court reviewed the, we'll call them the green cards for lack of a better description, were they actually admitted into evidence? No, so the actual green cards were attached to the response to, only to the response to the directed finding. So the notice of lien itself with the actual affidavit by Philip Tolbert actually on it, and then Paul Salce's actual testimony were the two things that were admitted into evidence for notice. Why weren't they actually admitted somewhere? Well, the, if you want to know the long and the short of the story is, truth be told, it's because I was the second counsel. I came in at the, at a different time in the case. The other one, the original counsel, had been in a car accident. And so I was given a file, and I did not file that original complaint that would have attached it and all that. So it was one of those things where my client showed up with it after we rushed it. But the statute seems to require something more specific than what occurred, correct? Well, the statute requires, in fact, notice. So that's what the statute, Section 24, requires, is notice. So if you look at what the actual Illinois courts state, is the Illinois courts interpret strict requirements of notice by examining how effectively a party did, in fact, notify the other side, rather than simply by basing it on whatever phrase of the statute was followed in exact detail. But here we have an affidavit from Phillip that says that it was sent certified mail. But was there notice that really had to be sent pursuant to Section 24 where we had sworn statements here as well? There were sworn statements. So why did there have to be notice as well, pursuant to 24? Well, so that's my second argument on the appeal, is that, in fact, there were sworn statements. And that's a requirement under Section 5, and testified to by the defendants. But the sworn statements themselves are not in evidence, are they? No. And so what evidence in your case in chief was there that notice of lien was ever actually received by the defendants? What evidence? So the evidence is an affidavit, the notice with the affidavit from Phil Tobridge that states that he sent it, certified mail, return receipt. And it does state all the parties on there as CCs. And also Paul Salcy himself testifying that, in fact, it was sent return receipt. So there are two pieces of evidence that were not, you know, there was no evidence that it wasn't, there was no notice. There's no evidence that it wasn't received. In fact, the only evidence of notice is, in fact, entered by the plaintiff in which they, it was Exhibit 16, that it actually has an affidavit that says it was sent and CCed, and it says that it was sent by certified mail. And then it was Paul Salcy himself on even cross-examination stating that it was sent that way. Do we know what the it is? I mean, it says CC, and doesn't it say document? Is the document named? So it states that I served a copy of the above document, so that's the notice of name, and it says any related documents by first class, certified or registered mail, postage prepaid, addressed to the above named parties at the address listed above on March 14th. And then he declares under penalty of perjury. So it is the document that he served, and it is CCed to those three individuals that are the owners of the, and the general contractor, and all the proper parties. Well, two people testified, Larson and Girardi, that would be critical to this particular issue. Were either one of them asked if they had ever received it?  So he wasn't asked if he received it. And Larson was not the person that would have received it, so he was not asked. He was instead asked whether he had noticed through sworn statements. So at the point, the problem is that once this issue came up, plaintiff no longer has the case in front. And then the defendant instead avoids the actual, avoids putting any evidence on a notice to preclude us from asking about notice. So there is no... Well, whose obligation is it under the Act to prove notice? It's the plaintiff's, which is what we said that we had done through both the notice of lien being sent out and Paul Celsi's actual testimony. And neither of that is disputed. Defendant never puts forth an evidence that they didn't receive it, and so what we have before the court is, in fact, a notice which states that it was sent, and we have Paul Celsi testifying that it was sent, certified mail. And so that is the evidence that plaintiff puts on, and defendants never state, we didn't get it or we didn't have notice. And then also, instead defendants say, well, we were doing sworn statements. We were paid that way. So once again, if we look at what's required for a mechanics lien claim is notice. And I think through all actual notice was proven by the plaintiff. It was proven through not just the notice of lien, but that there were sworn statements, that there were, that the actual owner was on the site, that everybody knew Celsi was there, that the general contractor, they were disputing all the way from prior to this that they even owed Celsi anything. So the purpose of the mechanics lien statute itself is so that the actual owner or project manager doesn't pay the general contractor, and then the sub tried to sue. And this didn't happen because everybody decided that Celsi shouldn't get paid. And so they knew that they weren't going to pay the general contractor. It is not as if the owner had paid the general for this work and then is out. And that's the purpose of the mechanics lien statute. It's a remedial statute for the actual subcontractor. And in fact, the purpose of notice is so that they get notice. But we know that they got notice. They were there. They knew Celsi wasn't paid. Everybody was disputing it. And all that evidence went in at trial. I mean, that's why we've come back before you a second time is that notice was never an issue. This never was even brought up. So this is an actual trying to do form over substance. The substance of the mechanics lien statute is that notice is what everybody's entitled to. And the owner had notice. They did know. And so the fact that Phil Tolbridge instead stated didn't put his affidavit underneath those addresses, that's what we're going to base the fact that they didn't have notice on. He states that he sent it. He states that he sent it by certified mail. And we're going to say that because he incorrectly put CC instead of put their names above is form over substance. But the law concerning this statute is that since it's in derogation of the common law, it has to be strictly followed. And we have to strictly follow it. Once it's all in place, then we liberally construe the payment or the need for payment or the propriety of payment. And it seems like the court couldn't get past that part because although he did entertain, the trial court did entertain some evidence about maybe it was fraudulent, it wasn't interested in that. He was interested in the statutory authority. And if you break it down one phrase at a time, the first issue was within 90 days after completion thereof. There is a dispute over what the last billable day was. Isn't that correct? No, there's not. I mean, that judge did not find that there was a dispute that the last billable date was December 26th. That was not the issue that the court came down on. And at the end, that was proven. There was an email that stated, I'm going to take my stuff off the job this day. And he was there. And all the testimony proved that it was December 26th. Was that a billable workday? Yes. Removal of the? Yes. And it did come on the bill. And he was actually, there's a time sheet. So the judge did, the actual court did not find that that was the problem. It was truly what the judge finally decided on was the fact that Phil Tolbridge's affidavit came above the CCs. I mean, that's essentially what it was. And so that he couldn't, because the, you know, the actual return receipts weren't in evidence, that those three CCs were not enough. But my contention is, first of all, that he wasn't, he was not taking into account that Paul Solsey himself testified that they were sent that way. So we have two pieces of evidence. In addition, that that wasn't enough on the directed finding. On the directed finding, he stated that the plaintiff made a preemphasia case. And he stated that that notice was enough. And he did the two-part analysis under 2-1110. And he came up with the fact that he weighed the evidence. He said Paul Solsey was credible. He said that it went in there. And he made that determination. So then it moves to defendant's case. And defendant doesn't put anything else on with regard to notice. There's not one iota of evidence with regard to notice. And then they don't state again that they want a directed finding as to the preemphasia case at the close of their case. And then the judge goes back and finds that we didn't have a preemphasia case. But there was no motion for that. The defendant had already weighed it. And the judge had already ruled on it without any new evidence that that was any different from what the plaintiff put on. So if the defendant had come in and stated we never got it, we never got the notice, we never received anything, we didn't know, the judge may have then said they put a defense on for that. But nothing different went on when he made his directed finding ruling. There was nothing different as to notice at the end of the case. Who did Mr. Larson testify for? He testified for the defense. And who did Mr. Girardi testify for? He testified for both of us, but we put him on once in our case-in-chief. So he came in first on our case-in-chief, but because he was no longer with any of us and he had a schedule, the judge allowed us to put him on in both our cases-in-chief as the first witness. Okay. I mean, he had a schedule. I get that. Right. Did anything prevent him when you realized what was happening from being recalled? Maybe even as an enemy witness, so to speak? Well, so I couldn't so that was kind of how I was boxed into not being able to recall anybody with regard to any kind of notice or anything because the defense didn't bring up notice when it's my rebuttal turn. I can't suddenly bring up what I forgot in my case-in-chief. Did you bring a motion to reopen your proofs? I did not. Okay. Was there anything preventing you specifically from doing that? I guess no. Okay. But I think the reason why I didn't was I felt that I had done it, we had won our directed finding. So we had been told we had a prima facie case. Well, according to the case law, if they didn't put anything on after that, you were in good shape. But once they start to put on a defense that may or may not relate, I mean, a defense is the issue and they did put on a defense. They put on a defense that didn't include the issue of notice, number one, and they also put on a defense that precluded, that didn't even address the prima facie case and then they didn't renew their motion for directed finding at the close of their case to say that it wasn't. They put on evidence that it was the jump from 27 whatever, I'm rounding the numbers, from 27.8 to 100 and something was a significant jump. They didn't necessarily agree, yeah, 179. And did you try to ask, well, when did you receive notice of this information? Did you ask that question? When did you realize that it went to 179 from 27? So we did, instead we asked about the sworn statements knowing that that was notice alone. So we made the decision to go and ask about the sworn statements because he referred to that. But Mr. Johnson, who allegedly was the one who would review those sworn statements, never was called to testify by anybody. He was not. Okay. So I think that, while you may disagree, I think that the plaintiff did prove its case and that he did, in fact, show that this notice of lien was sent out. There was an affidavit from Phillip Tolbridge that stated that it went out, on top of Mr. Sauci testifying both on direct and across, that, in fact, it was sent, returned, received, requested. And that evidence is enough. And because that testimony was not disputed in the defense, there was notice that was shown. And there was nothing that showed that, no, that wasn't sent that way. We didn't get it. And because Mr. Sauci himself testifies that that's how his notice went, that that would be enough under the law because the courts have interpreted that notice is what is required, not that we are going to get hung up on the strict requirements. He did it within the time frame. It's not that there was any dispute of that. It is much more about the fact that was this sent out, returned, received. And I think we proved that it was returned, received because of both those pieces of evidence. Nobody seems to dispute that M.B. Financial was served. I mean, the argument is, well, we don't know who M.B. Financial is, and that's just the argument that's out there. Was the owner of this property ever served? And that's what Paul Sauci testifies on direct exam and then on cross, that, yes, that he sent, that those were all sent certified now. Well, to whom was it sent? And he testifies that it was sent to those three people on the CCs. The Downers Grove, the entity, or a person within the Downers Grove organization? Yes. Organization. If you look at, it's right, Girardi of Girardi, Gerald Costinelli, which is Insight's registered agent, and also Downers Grove's registered agent. So he testified that those went returned, received by oral testimony. He stated that those three went out that way. And so it's certainly, I think, that notice, actual notice was proven, and that's what the mechanics lien statute states, is that in order to have a mechanics lien, you have to show that there was actual notice to be able to avail yourself of the remedial provisions. And there's no dispute that when it was sent, it is just this fact that the affidavit came above the CCs. And a form over substance, I think, is the issue, which gets to the sworn statements. There was testimony. Certainly the sworn statements were not evidence. But there's direct testimony from Insight that the sworn statements were their policy. That's how they do it. And Section 5 of the Mechanics Lien Act states that you have to do it that way. So that alone gives them actual notice. And that shows that, in fact, the mechanics lien, the notice wasn't even necessary, and that SASE is still entitled to its mechanics lien. Because if there is sworn statements that go back and forth,  And I don't think SASE stated that they had knowledge, and the defendants did not state that they did not have knowledge. And there was no testimony where they came in after SASE said, you got your notice, where the defense came in and said, no, we didn't, we never got notice, we didn't know. Because they didn't know. And I think that that evidence came through in plainest case in chief. So that is the directed finding. And we talked a little bit about this. So I feel like I'm going back into what I was saying before. You are. But, you know, you mentioned you got the case from somebody else who had a car accident. But when you got the file, didn't you go through the file to confirm that everything you needed to prevail was in the file? Yes. And the notice of lien was what I believed was needed. And notice had never been a contingent issue. Usually when there's notice issues, and you've already been up on summary judgment and you've been up and down on appeal, that is not something that. We also don't have the sworn statements in the record. That's true. Which, by the statute, they're required to list the amount due and to whom, correct? Correct. Do we have the amounts on the various sworn statements, what was due? Not enough. So even the hearsay testimony does not satisfy the statute. Do you understand my point? No, I do. Is that strict compliance? So I think what the purpose of the sworn statements and the knowledge of the sworn statements is to show actual knowledge of the fact that there was a dispute and that there was money owed. So it goes back to the Section 24 actual, that the requirement is notice. And I think the sworn statements bolster the argument of notice under Section 24. But you're talking about a sworn statement that we don't have and it's incomplete because we don't know what amount it listed, correct? Correct. And then you're relying upon the affidavit, which doesn't have the return receipts, that was not put into the record until the motion for response to the motion for direct appeal. Correct. So it's the affidavit and the fact that the affidavit shows that it does and the argument for sworn statements are used to show notice and not the amount. I understand that the notice of lien sets forth the amount. It is coupled together because it's my interpretation of Illinois law that form over substance, that the requirement under the Mechanics Lien Act under everything is that you have to have the notice. And they had the notice, and one of the other ways that they got that notice was through these sworn statements. I have one other question. If we agreed with you, the judge has apparently only made a finding on the issue of notice. There is still an issue then outstanding that he did not decide on, which is the amount. Right. What would have to happen? We'd have to go back, and he would have to make that ruling. So he would have to go back down and do that. Would he take new evidence or would he just go from the evidence that he had? I think that he could go. I think that he remembers this case. It was one of his. He had just been transferred into the courtroom, and it was one of his first cases that he had done in trial. So it was his first Mechanics Lien case. So I think that he would probably remember it. We do have transcripts. So I wouldn't think that we would need to retry it. I think that Mr. Pack probably would agree with me that we put in all the evidence as to whether he's entitled to any kind of damages with regard to all the other issues and what those amounts are. Thank you very much. Mr. Pack. Good afternoon, Your Honors. I'm Bruce Pack. I'm representing the defendants in this case. I think the issue is whether Section 24 of the Mechanics Lien Act was strictly adhered to. And for reasons that are unclear in the statute, the section clearly was not adhered to. But are we elevating, as counsel said, form over substance when there was actual notice here? There was an actual notice, and that was never approved. Can you? A little closer to the mic. Maybe pull it down a little bit. I apologize. No. I did too much mechanics work when I was a kid, so. Not lead work, just a kid. Keep your voice up, as you can see. The ceiling is very high. It's hard to. So you'll think you're yelling, but then we could really hear you. Okay. I apologize for that. I tend to speak a little softly. So I believe you asked. Wasn't there actual notice here? How do you respond to the arguments that counsel made with respect to the ways that there were actual notice here? And why do you contend that this is not just form over real substance of actual notice? Well, first of all, the form over substance does not apply in applying the Mechanics Lien Act. Secondly, as to actual notice, you have actual notice through a properly served 90-day notice. That did not happen here. You can have actual notice through sworn statements. If the sworn statements, if it's proven that the owner was supplied with sworn statements, which identify the subcontractor as having provided services and the amount of those services, that can excuse the failure to serve a proper 90-day notice. And here you did have testimony regarding the sworn statements, correct? No. Well, testimony to the extent that Mike Larson from Insight testified. He's the only person that was asked about sworn statements. And his comment was that they may have gotten sworn statements, but he didn't know, and it wasn't his position to review sworn statements. There was no acknowledgment that Insight, or the owner, received sworn statements from Gerardi, the general contractor, that identified Salsa and at a certain amount that Salsa was open. No such testimony. Well, they were certainly arguing at some length, and there was testimony about the fact that whatever Salsa was owed was too much because there was fraud involved. How did they know what was owed to Salsa if they didn't have some notice of that amount? They were provided. And this is, again, one thing that Salsa argues as far as whether Insight or the owner had knowledge that Salsa was involved in the job. That knowledge does not – it may be good for an unjust enrichment or a quantum heroic claim, but to show that the owner had knowledge that somebody was on the job and was owed money does not comply with the mechanism. So, I think the record's clear that the owner, through Gerardi, was provided invoices which indicated that Salsa was owed a certain amount of money. Now, that may say that Salsa is owed money. It may be some evidence that Salsa was on the job, but it doesn't show evidence of a mechanic's lien claim, and it doesn't show evidence that one was served properly. So, you might have – because there was no contract between the Salsa and the owner – you might have a claim for quantum heroic and unjust enrichment because the owner knew you were on the job. You could say the owner benefited from the services provided. But the Mechanic's Lien Act makes no provision that that also complies with the Mechanic's Lien Act. And that's what we're talking about. That's what this is all about, is the Mechanic's Lien Act, and was it followed. And it has to be strictly construed. Once you meet the technical requirements, then the remedial purposes of the statute can be applied, but not until those are met, and they weren't met. Why isn't the testimony that the notice of lien was sent by certified mail sufficient, together with the information on the written document that is a copy of what was sent? And isn't carbon copy commonly understood as being a duplicate of what was referred to above? Why isn't that sufficient here? I'm looking at it right now. So am I. And if you look at it, and let's plan on going through this. I'm glad we are. If you look at it, you can see that it's directed to the MD Financial Bank. And I look at carbon copies, and, of course, we're all familiar with letters that we send, and we'll copy certain people on it. But the person to whom the letter is addressed, in this case, MD Financial Bank, that's the principal recipient of the letter. And if you look at the affidavit of service, it refers to it being – it's not a matter of the CCs coming below the proof of service. I look at the CCs as being people who are being provided a copy, essentially, as a courtesy, but they're not the principal partner who are intended to be the recipient of this letter. Well, what did it matter if they got – I mean, why does the intention matter? Carbon copy means they got an exact duplicate of what's referred to above. So what is the intent? What would have been different in the version that they were, quote, supposed to get? Well, first of all, this was not sent out in accordance with the statute. And the statute is quite clear, and there's a good reason for it, that these have to be – these 90-day notices have to be sent out, certified mail, return receipt requested, limited to address these only when due. All right, but we have testimony, right? Right. Okay, we have testimony that that was done. No, we don't know that. There is no such thing. Did I mishear, Counsel? Pardon me? Did I mishear, Counsel? Yes. I believe she said that there was testimony. We don't agree. All Mr. Salsey testified to is that this was sent out. Mr. Salsey didn't testify to how this notice was sent out, only that it was sent. Mr. Salsey testified that he sent the notice out, and clearly, Mr. Trowbridge sent the notice out. Mr. Salsey only testified that he sent it out. He didn't testify as to how it was sent out. So, you know, I understand, Your Honor, but that – you know, the record's pretty clear on that. He testified that he sent it out. So he did testify that this was sent out, certified mail, return receipt requested, limited to address the only. In fact, he just said, as I mentioned. It meaning this notice of intent that you and I are both looking at marked Exhibit 16. Right. Okay. But this Exhibit 16 does have written right on it at the top, via certified mail and U.S. mail return receipt requested. So if he testified he sent it out, then why, again, isn't that sufficient together with what the black and white print reflects? Well, first of all, it doesn't comply with the Act. And the Act has to be complied with. Otherwise, the Act loses all its purpose. Secondly, if you look at that, via certified mail, U.S. mail return receipt requested, where it's not limited to address the only certified number, and then it gives the number. That clearly applies to MD Financial Banks. There are no certified numbers that relate to the carbon copy people. There's nothing indicated in this as to how it was sent to them. There's no way to prove. I mean, the reason you ask for the certified mail return receipt requested and limited to the address the only, is because you've got to prove that it was sent and received one way or another. And, of course, having it limited to the address the only, supposed to certify that it got to the person in authority. And then you get the return receipt back, the green card. Now you've got proof that it was done. The fact that you testified it was sent out, even if you testified, yeah, we sent it out just as the statute provided, that's great, but you still have to have the proof that it was actually received. One way you can get beyond that is for the defendant to acknowledge receipt. We weren't, it's not our obligation to prove the plaintiff's case. And we weren't.  Nobody at Insight, nobody at the owner, nobody at the GC, the Gerardi, the general contractor, nobody was ever asked, did you receive this notice? And so when you look at the evidence, and you, I mean, you can't weaken the mechanics, lean it. Is there, what evidence is there that the necessary parties got the property? Did you or trial counsel object when the court was shown the green cards on your motion for directed finding? Because he did see them. Yeah, he saw them. Did you object? Well, as I recall, we raised the issue that they're not in evidence. Okay. But they weren't presented, they weren't presented to be admitted into evidence. Well, what were they presented for, in your mind? Well, they were presented for, in my mind, to show that the green cards proved that this notice was sent to the people who were carbon captive. And the judge found that there was a prima facie case. No. The judge found at the end of their case there was a prima facie case. Right. Not after. I know, but that's when he looked at them. He saw them during that argument on the motion, didn't he? Oh, no. When did he see them? He saw them, yes. He saw them when we were arguing the motion for directed finding. There'd be no reason for him to see it otherwise. Right. Under this scenario. I mean, there might have been a reason, but under the scenario we have here, that's the only place he saw them. That's true. Okay. So then he denies the motion and it goes on to your case in chief. Right. If you present no evidence concerning that, and I'm not saying you have to, if you present no evidence about those documents that he looked at to make his decision, why can't they be considered as proof, then, that the documents were received? Because they're not in evidence. There's nothing, there's still nothing in evidence that suggests that those, to whom those cards were sent. All right. Well, then the alternative to the mechanics lien is that actual notice would be sufficient. Isn't his review of those documents an indication that the parties did have actual notice of that information? I don't recall that the judge mentioned as part of his decision that the green cards entered into his decision. I mean, to rule on a motion for a directed verdict, you have to, it's a two-prong analysis, but you have to consider what is in evidence, and the green cards were not in evidence. And Justice Hutchinson asked this question. Actually, I had written the same question down myself. There was no motion to reopen the proofs, correct? And that's true. But the trial court looked at these documents. The trial court, sure. Isn't that tantamount to a motion to reopen and allow them in without objection, the court to examine the receipts? I don't believe so. I think he'd make a motion. I think the judge, even the judge commented, and he was somewhat incredulous, that the green cards weren't admitted into evidence, that the sworn statements were not admitted into evidence. So what his thinking was, I can't be sure of, but I do know how he ruled and why he ruled, and I don't think that by, I think that would be somewhat unfair in a way, if you, there's some piece of evidence that's crucial to proving your case, that for some reason isn't put on when your case is achieved, and then you present that evidence, which is critical evidence, as an exhibit to a response to a motion for a directed verdict, without any motion to have that admitted, I think that would be somewhat unfair to the other side. I think if you have some evidence that's crucial to your case, it's not admitted, and it does come up later on,  the appropriate way would be to file a motion to have that, to reopen the case, have the documents admitted, because then, I mean, just because on a response, there's no opportunity for cross-examination. There's absolutely no way to challenge those. I think you would have to file a motion to reopen the case and have those documents put into evidence. Well, you could have objected to the courts looking at them or to their being attached, could you not? And I believe in our reply. I imagine that we did. I just don't recall. Okay. And as being attached to that response, are they not automatically part of the court record? Part of the court record. That does not make sense. I mean, there's a lot of things that are not, as you know, obviously, are part of the court record, but it doesn't make them part of the evidence. Thank you, sir. Ms. Grogan, follow? I just have three short points. The first is that for Section 24, you don't have to prove that the actual certified mail was received. For the purpose of that section, notice by register that certified mail is considered served at the time of its mailing. That's what the section stated. And Mr. Salcey did testify at the record, page 363 through 364, that, in fact, exhibit number 16 was sent. And he says, was this document sent to Frank Girardi at Insight in Downers Grove, LLC? He says, yes. And then on cross-examination at the record at 368, he states, Mr. Peck asked him, and this notice of lien was it sent certified mail, return receipt requested, is that right? And he says, yes. So along with that affidavit from Phil Tolbridge that states that he did it and, in addition, he did testify to, there is evidence that, in fact, this was sent out pursuant to Section 24 by registered certified mail. And then you don't need to prove that it was actually signed for or anything else if that is the case. Well, I think nobody is really disagreeing that Midland received it. The disagreement is that they received a certified mail, and that's the purpose of this statute. If you get a return receipt requested, you don't have to go through the hoops and you can introduce those to establish your compliance. Okay? Nobody disputes Midland received it. There's a question of, why did Midland receive it? Were they receiving it on behalf of Downers Grove? Were they receiving it on behalf of some other, Elmhurst? I mean, why were they getting it? And what I'm stating is that the testimony was that that also, it was also sent to Frank Girardi inside and down in Grove as well. But we don't have the numbers. We don't have any certified numbers next to their names, do we? But we have testimony from Paul Salsak that it was sent that way. And that's, I guess that's what I'm clarifying. Did he know the numbers? Did he know the numbers? Did he say Downers Grove was, I have it here, but I'm not going to find it. And I understand what you're saying. He did not testify to the numbers, but the testimony was that it was sent certified mail, and so that was the testimony at trial. And, you know, in addition, obviously the green cards were attached and part of the record, but I think you heard that from Mr. Peck. Thank you. We thank both parties for the arguments today. The case will be taken under advisement. A written decision will be issued in due course. The Court stands adjourned. Thank you.